**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL CASE NO. 1:14-CR-00452-TWT-1 |
| KEVIN SHIN, | |
| Defendant. | |

### SENTENCING MEMORANDUM OF DEFENDANT KEVIN SHIN

Defendant Kevin Shin, by and through counsel, submits this Sentencing Memorandum prior to his sentencing, which is scheduled for November 17, 2015.

Mr. Shin respectfully requests the Court, after consideration of the required factors in 18 U.S.C. § 3553(a), sentence him to a period of probation plus the recommended fine and restitution, as punishment for his offenses. Such a sentence would be within the Guidelines range (after consideration of the Government's Motion for Downward Departure Due to Substantial Assistance (U.S.S.G. § 5K1.1)) and best serve the interests of justice, as discussed herein.

I.      **Summary of Case Background**

Mr. Shin is a 39-year-old naturalized U.S. citizen (since 1999), husband, and father. At the time of the offense, he had just begun buying foreclosed homes, rehabilitating those homes, and selling them for a modest profit. This case involves his participation in a scheme organized by others to rig bids for foreclosure auctions in Gwinnett County, Georgia.

Mr. Shin learned of this investigation when he received a subpoena from the Department of Justice. From that moment, he has fully cooperated with the Government's investigation, met with the Government on multiple occasions, and never sought to minimize his involvement in the illegal conspiracy. Mr. Shin pleaded guilty on January 29, 2015, to one count of conspiracy to commit bid rigging, and one count of conspiracy to commit mail fraud. Mr. Shin has fully complied with the terms of his appearance bond, and cooperated with the U.S. Probation Office in preparation of its Presentence Report (PSR) submitted to the Court.

The United States has filed a Motion for Downward Departure based upon the substantial assistance that Mr. Shin has provided and has asked the Court to reduce his recommended guideline range by 3 levels. If the Court grants that motion, and reduces his recommended guideline range from 11 to 8, then Mr.

Shin's recommended sentence will fall within Zone A – making him eligible for a sentence of probation of one to five years in addition to imposition of a fine and restitution. For the reasons included in the record of this case and summarized in this Sentencing Memorandum, Mr. Shin asks this Court to grant the United States' motion and impose such a sentence.[1]

## II.   Sentencing Considerations

Mr. Shin does not dispute any of the factual statements made by the Government in its Sentencing Memorandum (Dkt. 14) and of course does not dispute the fact that he committed the crimes to which he pleaded guilty. But, Mr. Shin respectfully submits that his case has a number of distinguishing characteristics – none of which the Government disputes – that make the Government's recommendation of a three-month term of incarceration unnecessary and ill-suited to serve the interests of justice. Rather, Mr. Shin submits that a sentence of up to five years of probation coupled with the recommended $20,000 fine and $32,550 in restitution requested by the Government is most appropriate

---

[1] In the alternative, or if the Government's Motion is not granted and Mr. Shin's Offense Level remains in Zone B, Mr. Shin would request sentencing to a period of home confinement and probation for the same reasons outlined in Section II of this Sentencing Memorandum.

and fully consistent with all of the sentencing principles and requirements the Court must consider under 18 U.S.C. § 3553(a).

> A. The Defendant's Life and Work History Shows His Integrity and Diligence[2]

As the Government acknowledges in its Sentencing Memorandum, Mr. Shin is not a sophisticated businessperson. Rather, as is described in the PSR, he is a hard-working young man who immigrated to the United States from his native Korea as a teenager. He lived in the United States without much in the way of means or family support but learned English. He graduated from high school but did not graduate from college. He has worked for himself and for his brother in an effort to support his wife and 7-year-old son in Duluth. His only period living away from Georgia since his emigrating was a brief period when he lived in China in support of the efforts by his wife (a native of China) to re-establish a relationship with her parents. He has no criminal record or even a blemish on his credit history.

In 2005, Mr. Shin began work as a real estate agent in Duluth. When the market crashed in 2006, his business dried up. He then decided to begin buying

---

[2] The discussion in this section relates to the factor identified in 18 U.S.C. § 3553(a)(1) (history and characteristics of the defendant).

residential properties one at a time at foreclosure auctions, making small improvements, and reselling them in order to support his family.  He developed his small business (EHM Property) through hard work and sacrifice.  Mr. Shin initially took out a home equity line of credit to get his purchase money and began attending the Gwinnett County foreclosure auctions near his home.  He only had enough money to purchase a single low-cost house at a time.  He knew that if he overpaid or purchased the wrong home, he would lose his money and devastate his finances.  Therefore, he did not participate in the auctions at first.  He just watched. After about eight months, he purchased his first investment property, a small house in Sugar Hill, Georgia, in February 2007.

Over the next two years, Mr. Shin continued to attend the monthly Gwinnett County auctions as his sole source of affordable properties.  He purchased six more homes between April 2007 and January 2009 (one as low-priced as $54,000). None of those sales were tainted by the conduct at issue in this case.  Mr. Shin struggled in this business when homes took longer to resell.  He twice had to borrow money from his wife's family to keep his business afloat.

### B. Mr. Shin's Involvement in the Offense Conduct Was An Aberration in An Otherwise Honest Life.[3]

While attending the auctions, Mr. Shin noticed that a group of purchasers – whom he called insiders because they seemed to know each other and the criers conducting the auctions. The insiders seemed to control who won many of the auctions. Over time, he noticed that some of the insiders would talk about properties immediately before or during the bidding, telling each other not to stop bidding. After one of the insiders won the bid, the group would reconvene on the side and hold a second auction amongst themselves to determine who would win the property. The criers facilitated this in many instances by allowing an insider to attend these second auctions rather than immediately paying for the property as Mr. Shin and others were required to do. On several occasions, the insiders up-bid him on properties he had targeted. Mr. Shin became very frustrated. Eventually one of the insiders invited Mr. Shin to participate in the second auctions, and he agreed to do so. Mr. Shin does not provide this information to explain or excuse his behavior. He provides this information to demonstrate that he did not instigate

---

[3] The discussion in this section relates to the factor identified in 18 U.S.C. § 3553(a)(1) (nature and circumstances of the offense).

or organize the illegal activity. Mr. Shin was not part of the insiders' extended family and was never a leader, organizer, manager or instigator of the conduct at issue – only an honest but mistaken participant in the conspiracy run by the insiders.

Mr. Shin understood that the "second auctions" were not right. But, he did not understand exactly how wrong they were. He participated in his first "second auction" in March 2009, purchasing a house in Sugar Hill, Georgia, for $134,000. After that, he spoke with an attorney who did closings for him about the "side auctions." Mr. Shin chose to describe what had occurred at the March 2009 auction and ask the attorney whether it was proper. As he has told the Justice Department and the FBI, his conversation with that lawyer unfortunately, perhaps due in part to English being his second language, did not leave him with the impression that the conduct was illegal. He understood that it was not good but did not understand fully that it was illegal. He believes that if he would have gotten clearer advice, he would not have participated in any further "side auctions." Mr. Shin has never sought to raise an advice of counsel defense and recognizes that he understood the wrongfulness of his conduct. But, he mentions this incident because it explains – in part – his participation in the Offense Conduct.

Even laboring under that misapprehension, Mr. Shin did not seek actively out opportunities to engage in similar conduct. Between April 2009 and the time he received a grand jury subpoena in this case in June 2012, Mr. Shin attended nearly all of the 34 monthly auctions in Gwinnett County. He bought 13 more properties, only three of which involved second auctions. Thus, in the almost six years of auctions he attended between 2006 and 2012, only four of the 21 properties he bought were infected with illegal conduct, and he engaged in some sort of "second auction" at only 10 of the approximately 70 auctions he attended (at which tens of thousands of properties were auctioned).[4] Unlike other cases before this Court, Mr. Shin never attended or participated in any illegal activities in connection with real estate foreclosure auctions in any other counties.

### C. Mr. Shin's Reaction to Correct His Mistakes Was Immediate and Comprehensive

Mr. Shin's reaction after receiving a grand jury subpoena also speaks volumes about him and appropriate sentence in this case. Mr. Shin has at every step gone above and beyond to make amends for what he now understands was illegal. Among the distinguishing steps he has taken:

---

[4] As is described in his Plea Agreement and the PSR, this includes Mr. Shin's participation on six separate dates in 12 "second auctions" in which he was not a successful purchaser of a house.

- He immediately retained counsel (first another counsel, then current counsel) to understand the issues and procedures involved in complying with the grand jury subpoena,[5] as he never sought to deny or excuse any of his conduct and only wished to be forthcoming to the Government from day one.

- He obtained, at thousands of dollars in personal expense, all of his corporate and personal bank records relevant to the subpoena.

- He prepared, with the assistance of counsel, a uniquely detailed and organized submission of more than 600 pages of documents related to all of the "second auctions" in which he participated, including real estate listing records, multiple listing service printouts, auction sheets, receipts, purchase and sale documents (both for the purchase and subsequent resale), bid documents, sales summaries, deeds, cancelled checks, lists of participants and their companies, handwritten notes in his possession, information about cash payments for which no documentation existed, and even materials outside the scope of the grand jury subpoena.

- He provided a candid and complete multi-hour interview to the Government (both the Justice Department and the FBI) in September 2012 and responded promptly to multiple requested follow up inquiries about specified topics and people he had encountered during the course of attending the Gwinnett auctions.

- He voluntarily and promptly amended all of his relevant year tax returns in November 2012 to reflect the improper payments he had received.

- Both prior to and after his guilty plea in January 2015, he provided substantial cooperation to the Government – and has offered to provide, has provided, and will continue to provide – any necessary or requested

---

[5] As Mr. Shin described in his interview with the Government, Mr. Shin's initial response to the FBI was unfortunately delayed by a few days due to the transmission of the grand jury subpoena to a fax number for Mr. Shin he did not regularly monitor. Had he received the subpoena earlier, it is more likely he would have been eligible to mitigate prosecution entirely under the Government's Antitrust Division Individual Leniency Policy.

9

    assistance as part of its ongoing investigation into real estate foreclosure auctions, including as a highly credible and knowledgeable witness for the Government (as described in more detail in the Government's Motion for Downward Departure Due to Substantial Assistance filed under seal). This is particularly significant, as the Government has acknowledged, given that Mr. Shin's plea was one of the first and additional cases are likely to be filed based in part on his cooperation.

- He has previously stated, in order to make amends for conduct he knows was wrong, he will immediately pay any requested restitution or fines despite his modest income and assets.

- He has avoided any contact with the real estate industry, other than single jointly owned property, and sought to earn a living by working in his brother's fabric/upholstery business.

    D. A Term of Incarceration Does Not Best "Fit" the Crimes Here[6]

The impact of the Government's requested sentence would not best fit the crimes committed by Mr. Shin. As the head of a household that includes a young, gifted child and his wife who suffers from a number of medical issues and is unable to drive, Mr. Shin has every incentive and expectation – as the Government concedes – to continue to be a hard-working, law-abiding citizen and never run afoul of the law in any manner. He is an honest man who made a mistake. He is deeply ashamed and embarrassed by his mistaken conduct and will forever bear

---

[6] The discussion in this section relates to the factor identified in 18 U.S.C. §§ 3553(a)(2)-(7) (related to need for the sentence imposed, kinds of sentences/ranges available, applicable Sentencing Commission policy statements, need to avoid sentencing disparities, and need for restitution).

that regret and remorse that he harmed the victims of these crimes and his family, regardless of the sentence imposed.[7]  *See* PSR (including letter from Mr. Shin); Exhs. A (letter from Mr. Shin's wife Amber), B (letter from Mr. Shin's wife's grandmother) (translated from Chinese), C (letter from Mr. Shin's brother and current employer), D (letter from Mr. Shin's real estate lawyer).

But forcibly removing a young man from the law-abiding path he has returned to in order to serve a brief period of incarceration – simply to send a purported additional deterrence message as part of a massive nationwide investigation by the Government with far larger and more complicit participants – is not absolutely necessary or appropriate.  It would destroy his family and its ability to function.  And no additional deterrence would be gained in adding incarceration to this small businessman's punishment given the facts here, and the cost and administrative burden of an incarceration of only a matter of weeks would scarcely be an efficient deployment of resources.

A term of incarceration to the facts here is a particularly poor fit here given the multi-year delay of bringing this case to conclusion.  Mr. Shin provided all

---

[7] With his guilty plea to two federal felonies, Mr. Shin also has reduced his ability to obtain a visa to accompany his son to see his mother's elderly parents, who are residents of China and too infirm to travel to the United States.

11

factual information requested by the Government about all of his dealings in the summer and fall of 2012 and indicated his desire to cooperate and enter a plea if necessary. He then waited for the Government to decide on prosecution, plea agreements and follow up questions, for more than three years after all the facts had been provided – including a period when, through no fault of Mr. Shin's, the Government decided to relocate personnel handling this matter from the Justice Department's Antitrust Division office in Atlanta to Washington, D.C., in 2013. The multiple years of stress, shame, and expense this investigation and prosecution has already caused Mr. Shin and his family pale in comparison to the need at this point to impose overly harsh punishment on him.

Rather, the sentence requested by Mr. Shin would be a far better fit given all the facts and factors discussed herein. A sentence of multi-year and probation (or, in the alternative home confinement and probation), coupled with immediate payment of the Government's requested significant fine and restitution, is appropriate. Such a sentence clearly falls within the permissible range outlined in the Guidelines and would not require any extraordinary departure or application of any special considerations, though some have recently been granted by this Court in parallel cases involving real estate foreclosure bid rigging pleas. *See U.S. v. James*, Case No. 1:13-cr-00506 (N.D. Ga. May 12, 2014) (Duffey, J.) (sentencing

elderly real estate agent who participated in bid rigging over many years with significant volume of commerce and fraud loss to 48 months probation, including 12 months home confinement).

The requested sentence also is consistent with the policy statements of the Sentencing Commission. These statements allow for imposition of additional requirements on a defendant receiving a sentence of probation to adequately ensure the individual does not become involved in future improper activity and receives punishment while still enabling him to be a productive taxpayer and head of household. *See* U.S.S.G. §§ 5B1.3(c)-(e); 18 U.S.C. § 3563(b). Mr. Shin would readily accept imposition of some or all of the discretionary, non-incarceration terms of probation set forth in the Sentencing Guidelines' policy statements.

The imposition of a sentence of probation also would be entirely proportional when compared with other defendants sentenced by this Court whose cases involved different levels of sophistication, involvement, remedial efforts, and circumstances. *See U.S. v. Omar*, Case No. 1:14-cr-99 (N.D. Ga. Oct. 20, 2014) (Thrash, C.J.) (sentence of four months to real estate professional for offenses involving defendant with significantly greater volume of commerce, fraud offense level (11) after cooperation reduction, and assets); *U.S. v. Lynn*, Case No. 1:13-cr-369 (N.D. Ga. June 16, 2014) (Duffey, J.) (sentence of three months in case

involving two separate conspiracies over 8 years in two counties involving higher fraud loss, offense level, and restitution).[8]  In other districts in which the Government has prosecuted similar activities probation has been a sufficient sentence.  *See U.S. v. Bradley*, Case No. 1:12-cr-130 (S.D. Ala. Mar. 5, 2014); *U.S. v. Threlkeld*, Case No. 1:11-cr-338 (S.D. Ala. Jan. 24, 2014); *U.S. v. Stacy*, Case No. 1:12-cr-83 (S.D. Ala. Sept. 18, 2013); *U.S. v. French*, Case No. 1:11-cr-251 (S.D. Ala. Sept. 18, 2013).

Finally, the proffered sentence includes a commitment by Mr. Shin to tender to the Court payment in full for the restitution amount recommended in the PSR and by the Government, immediately if so ordered.  As the PSR demonstrates, Mr. Shin is not a man of substantial means, but since his initial contact with counsel concerning his acceptance of responsibility that led to his guilty plea, he has set aside funds in order to disgorge his ill-gotten gains.

---

[8] Counsel is aware of the Government's recommendation for a similar three-month prison term in a related case scheduled to be heard by the Court on November 17, 2015.  *See U.S. v. Yoonas*, Case No. 1:14-cr-451 (Thrash, C.J.).  Mr. Shin respectfully submits the facts outlined here, as well as the smaller number of years of involvement, volume of commerce, and fraud loss – not to mention the lack of "insider" role of Mr. Shin, his exceptional level of cooperation to the Government, and the other factors discussed in this memorandum – support Mr. Shin's requested sentence.

Thus, Mr. Shin respects the previous statements of this Court that its sentences for bid-rigging activity must be fashioned "to reflect the seriousness of the offense, to promote respect for the law and to afford adequate deterrence to criminal conduct." Transcript of Sentencing, *Omar* at 14. But, given the factors contained in the record and outlined in this Sentencing Memorandum, Mr. Shin submits his requested sentence fully accomplishes those goals in this case.

### III. Conclusion

Mr. Shin respectfully submits that the appropriate sentence in this case is a period probation of up to five years (or in the alternative home confinement), coupled with any non-incarceration conditions imposed by the Court, along with the fine and restitution requested by the Government.

Respectfully submitted, this 13th day of November, 2015.

/s/ Adam J. Biegel

Michael L. Brown
Georgia Bar No. 088875
mike.brown@alston.com

ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA  30309-3424
Telephone:  (404) 881-7000
Facsimile:   (404) 881-7777

        Adam J. Biegel
        Georgia Bar No. 056898
        (DC Bar admission pending)
        adam.biegel@alston.com

        ALSTON & BIRD LLP
        The Atlantic Building
        950 F Street, NW
        Washington, DC  20004-1404
        Telephone:  (202) 239-3300
        Facsimile:  (202) 654-4992

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KEVIN SHIN,<br><br>    Defendant. | CRIMINAL CASE<br>NO. 1:14-CR-00452-TWT-1 |

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1D, counsel for the Defendant hereby certifies that this **SENTENCING MEMORANDUM OF DEFENDANT KEVIN SHIN** was typed in a font and point selection approved by this Court and authorized in Local Rule 5.1.

/s/ Adam J. Biegel
Adam J. Biegel

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KEVIN SHIN,<br><br>        Defendant. | CRIMINAL CASE<br>NO. 1:14-CR-00452-TWT-1 |

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing **SENTENCING MEMORANDUM OF DEFENDANT KEVIN SHIN** with the Clerk of Court using the CM/ECF System, which will automatically send notification of such filing to all attorneys of record.

This 13th day of November, 2015.

/s/ Adam J. Biegel
Adam J. Biegel